IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

V.                    Criminal No. 2:16-cr-20005-PKH-MEF-1
                      Civil No. 2:17-cv-02133-PKH-MEF

DAVID HENRY                              DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside,

or Correct Sentence by a Person in Federal Custody filed August 10, 2017. (ECF No. 31). The

United States filed its response on September 12, 2017. (ECF No. 37). Petitioner filed a reply on

October 2, 2017. (ECF No. 38). The matter is ready for Report and Recommendation.

## I. Background

On December 10, 2015, a Criminal Complaint was filed against Defendant/Petitioner, David

Henry ("Henry"), alleging that between October 11, 2015 and November 5, 2015, Henry used,

persuaded, induced, enticed, and coerced a minor with the intent that the minor engage in sexually

explicit conduct for the purpose of producing a visual depiction of such conduct and that visual

depiction was produced using materials that had been mailed, shipped, and transported in interstate

and foreign commerce by any means, in violation of 18 U.S.C. § 2251(a) ("production of child

pornography"), and that Henry knowingly made, printed, published and caused to be made, printed,

and published a notice and advertisement seeking and offering to receive, exchange, buy, produce,

display, distribute, and reproduce any visual depiction, the production of which visual depiction

involves the use of a minor engaging in sexually explicit conduct and which depiction is of such

conduct, in violation of 18 U.S.C. § 2251(d)(1)(A) ("advertising visual child pornography"). (ECF No. 1). Henry was arrested on December 22, 2015 (ECF No. 9), and he made his initial appearance on that same date (ECF No. 4). James B. Pierce, Assistant Federal Public Defender for the Western District of Arkansas, was appointed to represent Henry. (ECF No. 6).

On January 27, 2016, Henry was named in an Indictment charging him with four counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e) (Counts One through Four), and three counts of advertising visual child pornography, in violation of 18 U.S.C. §§ 2251(d)(1)(A), 2251(d)(2)(B), and 2251(e) (Counts Five through Seven). (ECF No. 10). Henry appeared for arraignment on February 4, 2016, and he entered a not guilty plea to the Indictment. (ECF No. 13).

On March 10, 2016, Henry appeared with counsel before the Hon. P. K. Holmes, III, Chief U. S. District Judge, for purposes of a change of plea. (ECF No. 15). A written Plea Agreement was presented to the Court in which Henry agreed to plead guilty to Counts One and Four of the Indictment. (ECF No. 16, ¶ 1). After reviewing Henry's rights, and receiving a factual basis for the plea, Henry formally pleaded guilty to Counts One and Four of the Indictment. (ECF No. 15). The Court accepted Henry's guilty pleas and ordered a Presentence Investigation Report ("PSR"). (*Id.*).

An initial PSR was prepared by the United States Probation Office on April 26, 2016. (ECF No. 18). On May 3, 2016, the Government advised that it had one objection to the initial PSR, namely, that the two separate dates of production of child pornography do not group under the Guidelines and they constitute separate units pursuant to U.S.S.G. § 3D1.4 resulting in a two-level increase of the offense level. (ECF No. 20). On May 10, 2016, counsel for Henry advised that he had no objections to the initial PSR. (ECF No. 21). The Probation Officer concurred with the

Government's objection that Counts One and Four should not be grouped for Guidelines calculation purposes, also found that the offenses for which Henry was charged but not convicted were to be considered as conduct not part of relevant conduct, and the relevant paragraphs of the PSR were amended.  (ECF No. 22-1).

A final PSR was submitted to the Court on May 17, 2016.  (ECF No. 22).  Both of Henry's offenses resulted in a Base Offense Level of 32.  (ECF No. 22, ¶¶ 33, 39a).  Specific offense characteristics enhancements were added: two levels because the offense involved a minor who had attained the age of 12 years but not attained the age of 16 (ECF No. 22, ¶¶ 34, 39b); and, two levels because a computer and cellular telephone were used to commit the offense (ECF No. 22, ¶¶ 35, 39c).  The resulting adjusted offense level for each count of conviction was 36.  (ECF No. 22, ¶¶ 39, 39g).  A two-level multiple count adjustment increased the combined adjusted offense level to 38.  (ECF No. 22, ¶¶ 39j, 39k).  A Chapter Four enhancement applied pursuant to U.S.S.G. § 4B1.5(b) because Henry engaged in a pattern of activity involving prohibited sexual conduct, and this increased his offense level to 43.  (ECF No. 22, ¶ 40).  After a three-level reduction for acceptance of responsibility, Henry's Total Offense Level was determined to be 40.  (ECF No. 22, ¶¶ 41-43).

Henry's criminal history score of zero placed him into Criminal History Category I.  (ECF No. 22, ¶ 50).  The statutory provisions call for a mandatory minimum of 15 years and a maximum of 30 years imprisonment on each count of conviction.  (ECF No. 22, ¶ 77).  Based upon a Total Offense Level of 40, and Criminal History Category I, Henry's advisory guideline range was determined to be 292 to 365 months imprisonment.  (ECF No. 22, ¶ 78).

Having received the final PSR, Pierce objected on Henry's behalf to the multiple count adjustment under U.S.S.G. § 3D1.4.  (ECF No. 24).  Pierce also retained the services of Emily Fallis,

Ph.D., a licensed psychologist, to interview Henry for the purpose of preparing a psychological evaluation. Pierce submitted Dr. Fallis' report for the Court's consideration "when fashioning the sentence of Mr. Henry pursuant to 18 U.S.C. § 3553(a)." (ECF No. 26). Dr. Fallis' report indicates "both antisocial behavior and substance abuse; and these problem areas suggest limited impulse control," that Henry "appears to be a sensation seeker," and that "[h]e has difficulty maintaining long-term relationships." (ECF No. 26-1, p. 6).

Henry appeared for sentencing on August 2, 2016. (ECF No. 28). The Court made inquiry that Henry was not under the influence of alcohol or drugs and was able to comprehend the proceedings; inquiry was made that Henry was satisfied with his counsel; the PSR was reviewed in open court and amended as to appending the psychological evaluation; the PSR was adopted in open court as amended; final approval of the Plea Agreement was expressed; a victim statement was made; Henry and his counsel were afforded the opportunity to speak and make a statement; and, the Court then imposed sentence as follows: 180 months imprisonment on each count of conviction, to run concurrently; five years supervised release on each count of conviction, to run concurrently; no fine; $75.00 in restitution; and, a $200.00 in special assessments. (ECF No. 28). Judgment was entered by the Court on August 4, 2016. (ECF No. 29). Henry did not pursue a direct appeal.

On August 10, 2017, Henry filed his *pro se* Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (ECF No. 31). The Petition raises two grounds for relief: (1) ineffective assistance of counsel for "failure to contest the propriety of the Government's § 2257(a) without filing a bill of particulars and/or motion to dismiss the Indictment"; and, (2) ineffective assistance counsel for failure "to argue in favor of a mitigated sentence based upon application of 18 U.S.C. § 3553(a) and case law precedent relativity (sic) of the substantive

-4-

unreasonableness of sentences involving child pornography convictions." (ECF No. 31, p. 4). For supporting facts, Henry's Petition states "See Legal Memorandum In Support of § 2255 Petition" (*Id*.), but Henry filed no such legal memorandum. The United States' response was filed on September 12, 2017. (ECF No. 37). Henry filed a reply on October 2, 2017. (ECF No. 38).

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Henry's Petition and the files and records of this case conclusively shows that Henry is entitled to no relief, and it is recommended that Henry's Petition be denied and dismissed with prejudice without an evidentiary hearing.

### A. Legal Standard for Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient

performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id.* at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

## B. Failure to Move for Bill of Particulars or Move to Dismiss Indictment (Ground One)

### 1. Effect of Henry's Guilty Pleas

Henry pleaded guilty to the two offenses of conviction. As a result, the Government contends Henry's first ground for relief – ineffective assistance of counsel for failing to file a bill of particulars or move to dismiss the Indictment – has been waived. (ECF No. 37, pp. 7-10). The undersigned

agrees.

When a guilty plea is entered, the focus of a subsequent collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)). As the Court in *Tollett* eloquently observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, *he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advise he received from counsel was not within the standards set forth in *McMann*[1].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id*. at 267 (emphasis added).

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a

---

[1] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962); and, *Kercheval v. United States*, 274 U.S. 220, 223 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

### 2. Henry's Guilty Pleas Were Voluntary and Intelligent

Henry was represented by experienced counsel, FPD Pierce, throughout the course of the prosecution, including arraignment, discovery, plea negotiations, the change of plea hearing, and at sentencing. At Henry's arraignment on February 4, 2016, Pierce requested discovery in open court pursuant to the Court's Pretrial Scheduling Order. (ECF No.'s 13, 14).

Pierce negotiated a plea agreement with the Assistant United States Attorney prosecuting the case, and he carefully reviewed the plea agreement with Henry before obtaining Henry's signature on it. (Doc. 16, ¶ 33). The written plea agreement informed Henry of the counts of conviction (Counts One and Four of the Indictment charging Henry with production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e)), and the maximum penalties, including a mandatory minimum term of 15 years imprisonment and a maximum term of 30 years imprisonment on each count. (Doc. 16, ¶¶ 1, 13). Henry acknowledged he had fully discussed with his counsel the facts of the case and the elements of the crimes to which he was pleading guilty; he agreed that he had

committed each of the elements of the crimes to which he was pleading guilty; and, he admitted there was a factual basis for his guilty pleas. (Doc. 16, ¶ 6). The plea agreement advised Henry of his constitutional and statutory rights, including the right to persist in his plea of not guilty. (Doc. 16, ¶ 7). By signing the plea agreement, Henry acknowledged that: he had read the plea agreement and carefully reviewed every part of it with his counsel; he fully understood the plea agreement; no promises, agreements, understandings, or conditions were made or entered into in connection with the decision to plead guilty except those set forth in the plea agreement; he was satisfied with the legal services provided by defense counsel in connection with the plea agreement and matters related to it; and, he entered into the plea agreement freely, voluntarily, without reservation, and that his desire to enter a plea of guilty was not the result of any threats or coercion. (ECF No. 16, ¶ 32).

During the change of plea hearing on March 10, 2016, Henry was sworn on oath and examined about the offense. The Court inquired of Henry about his age and level of education; inquiry was made as to whether Henry was under the influence of alcohol or drugs, and whether he was able to comprehend the proceedings; inquiry was made as to whether Henry was satisfied with his counsel; the possible severity of sentence was explained, as well as Henry's constitutional and statutory rights. Upon such inquiry in open court, the Court determined that Henry's guilty pleas to Counts One and Four of the Indictment were voluntary and intelligent and that there was a factual basis to support the guilty pleas. (ECF No. 15).

Henry does not allege in his § 2255 Petition that ineffective assistance of counsel rendered his guilty pleas involuntary, unintelligent, and invalid; but, Henry argues in his reply that "trial counsel's insistence that Henry plead guilty to production ... as opposed to instead pleading 'openly' if necessary to a distribution charge ... rendered Henry's plea unknowing and involuntary." (ECF

No. 38, p. 3).  This essentially argues ineffective assistance of counsel for failing to secure a more favorable plea agreement.  The argument finds no support in the record and is otherwise without merit.

Since Henry pleaded guilty, the United States, citing the *Tollett* line of cases, argues that he is precluded from obtaining collateral review of any independent claim relating to the deprivation of constitutional rights that occurred prior to the entry of his guilty pleas.  As the Supreme Court explained in *Missouri v. Frye*, 566 U.S. 134 (2012), this is not always so.

In *Missouri v. Frye* the Supreme Court addressed a number of questions related to ineffective assistance of counsel in connection with plea bargaining.  That case arose in the context of defense counsel's failure to communicate a plea offer to the defendant causing the lapse of the plea offer (which was a more lenient plea offer than the terms of the guilty plea entered later).  The Court first acknowledged "it is well settled that the right to the effective assistance of counsel applies to certain steps before trial."  *Id*. at 140.  Regarding an accused's right to effective assistance of counsel in plea negotiations, the Court determined that a proper beginning point was to discuss two cases in which the Court considered the role of counsel in advising a client about a plea offer and an ensuing plea agreement: *Hill v. Lockhart*, 474 U.S. 52 (1985) and *Padilla v. Kentucky*, 559 U.S. 356 (2010).

The Court in *Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*.  474 U.S. at 57.  In *Padilla*, the Court clarified that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."  559 U.S. at 373.  The Court in *Padilla* also rejected the argument, as made by the United States in the instant case, that a knowing and voluntary plea supersedes *all* errors by defense counsel. 559 U.S. at 365.  "*Hill* and *Padilla* both

illustrate that . . . there may be instances when claims of ineffective assistance can arise after the conviction is entered." *Frye*, 566 U.S. at 142.

Citing statistics of the prevalence of plea bargains (i.e., 97% of federal convictions and 94% of state convictions are the result of guilty pleas), the Court in *Frye* commented that, "[t]he reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages (internal citation omitted) . . . it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." *Id*. at 143-44.

One question confronted by the Court in *Frye* was how to define the duty and responsibilities of defense counsel in the plea bargain process, and the Court recognized, "[t]his is a difficult question." *Id*. at 144. Due to counsel's failure to communicate the State's plea offer to Frye, and the resultant lapse of the plea offer, the Court had "neither the necessity nor the occasion to define the duties of defense counsel" regarding "[t]he alternative courses and tactics in negotiation" that "are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process," focusing only on the question of whether counsel had the duty to communicate the terms of a formal plea offer to accept a plea on terms and conditions that may result in a lesser sentence. *Id*. The Court held that defense counsel does indeed have such a duty, and that when Frye's counsel allowed the plea offer to expire without first informing Frye of it or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires. *Id*.

The Court in *Frye* then addressed the question of what, if any, prejudice resulted from the

breach of that duty.  The Court noted that "[t]his application of *Strickland* to the instances of an uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill*," involving cases where a defendant complains that ineffective assistance led him to accept a plea as opposed to going to trial, but that *Hill* does not "provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Id*. at 148.  In a case such as *Frye*, where a defendant pleads guilty to less favorable terms and then claims that ineffective assistance of counsel caused him to lose a more favorable plea offer, the Court held that "*Strickland's* inquiry into whether 'the result of the proceeding would have been different,' requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." *Id*.  The Court further held that "[i]n order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted and implemented." *Id*.  The Court then commented that "*[t]his further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it* (internal citations omitted)." *Id*. (emphasis added).  On this last point, the Court provided some guidance in stating that "in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences," so that in most cases "it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial non-approval of a plea bargain." *Id*. at 149.

In contrast to the circumstances in *Frye*, there was no prior, more favorable plea offer made to Henry in this case. Nevertheless, Henry complains that his counsel should have obtained a more favorable plea offer for him, and specifically, one that required him to plead guilty only to "a distribution charge which involves a 5-year mandatory minimum sentence." (ECF No. 38, p. 3). This argument ignores that Henry was not charged with distribution of child pornography. The facts did not support such a charge as there was no showing that Henry ever distributed any images of child pornography. The facts did support the actual charges of production of child pornography and advertising visual child pornography. The facts supporting Henry's guilty pleas were set out and stipulated to by Henry in the plea agreement. (ECF No. 16, ¶ 6). The PSR also detailed the facts supporting Henry's production of child pornography (ECF No. 22, ¶¶ 13-26), and Henry did not object to those facts in the PSR. "A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant." *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).

Further, the plea agreement allowed Henry to plead guilty to only two of the four production of child pornography counts of the Indictment and none of the three advertising visual child pornography counts. Under such circumstances, the Court cannot reasonably conclude that defense counsel did not act "within the range of competence demanded of attorneys in criminal cases" in connection with the plea negotiations.

Henry fails to appreciate that plea offers are in many instances beyond the control of defense counsel, that they require the cooperation of the prosecutor, and that the United States has no obligation to extend any plea offer. These are all aspects of plea bargaining the Supreme Court addressed in *Frye*. In addition, one must consider that a federal judge is not obligated to accept any

plea agreement. This was specifically made known to Henry in his plea agreement. (ECF No. 16, ¶¶ 27, 28).

The Court also notes that where a defendant has pleaded guilty, courts have rejected claims that defense counsel was ineffective for failing to obtain a more favorable plea agreement. *See, e.g., Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006); *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986); and, *Estabrook v. United States*, 2012 WL 4981147 (D.N.D. 2012) (citing *Bethel* and *Craker*) (claim that defense counsel was ineffective for failure to negotiate a more favorable plea agreement failed to properly allege prejudice and was deficient as a matter of law).

In order to show *Strickland* prejudice, one must show a reasonable probability that but for his counsel's errors he would not have pleaded guilty and would have insisted on proceeding to trial. Henry makes no such allegation or showing. Moreover, in the context of his claim that counsel should have gotten him a more favorable plea bargain, *Frye* would also require that Henry demonstrate a reasonable probability that the prosecutor would have made such an offer and that the trial court would have accepted it. Henry has not done so. Just as the Court in *Frye* observed, prosecutors and judges are familiar with the boundaries of acceptable plea bargains, and one that has no factual basis to support it is plainly not within those boundaries. It is inconceivable that a plea agreement allowing a defendant to plead guilty to an offense for which there is no independent factual basis would ever be accepted by this Court. Therefore, Henry has failed to show any prejudice arising from his claims of ineffective assistance of counsel in the process of plea bargaining.

By voluntarily and intelligently entering his guilty pleas, Henry effectively waived all non-jurisdictional defects and errors that occurred prior to his pleas. He has not shown that his guilty

-14-

pleas were involuntary and unintelligent. He has not shown deficient performance by his counsel in connection with the plea negotiations. He has not shown any prejudice resulting from any alleged ineffective assistance of counsel in connection with the plea negotiations. Henry's first ground for § 2255 relief has been waived and should be denied.

### 3. Henry's Ground One Claim Otherwise Lacks Merit

Even if Henry were able to overcome the waiver resulting from his guilty pleas, his claim of ineffective assistance of counsel for failure to file a bill of particulars or move for dismissal of the Indictment has no merit.

Henry's § 2255 Petition contains no supporting facts for his conclusory allegation that counsel "was ineffective in his failure to contest the propriety of the Government's § 2257(a)[2] without filing a bill of particulars and/or a motion to dismiss the Indictment." (ECF No. 31, p. 4). In his reply to the Government's response, Henry asserts "had trial counsel correctly filed a Bill of Particulars it would have then required the Government to very specifically, evidentiarily (sic) and factually address each and every offense count contention plead by the Government, including the production counts[,]" and "[t]he Bill would have supplied trial counsel with the necessary 'ammunition' and knowledge to then effectively, in 'follow-up', either move to dismiss the production counts or to, instead, at a minimum, negotiate from a position of strength ..." (ECF No. 38, pp. 4-5). Henry does not, however, specifically allege what exculpatory or useful information might have been obtained through a bill of particulars, and his claim is conclusory and pure

---

[2] Henry was not charged with a violation of 18 U.S.C. § 2257(a) (relating to record keeping requirements for visual depictions of sexually explicit conduct made after November 1, 1990). Henry was charged with violations of 18 U.S.C. § 2251(a) relating to sexual exploitation of children.

speculation. *See Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (conclusory allegation, unsupported by specifics, is proper subject for summary dismissal); *Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel); and, *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986) (vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255).

Rule 7(f), Fed. R. Crim. P., provides that "the court may direct the government to file a bill of particulars," and it sets forth the time limitations on when a motion for a bill of particulars can be made. The Rule does not state any standards for determining when a bill of particulars should be required. The Eighth Circuit Court of Appeals has identified the proper purposes of a bill of particulars as follows:

> "[T]he purposes of a bill of particulars is to inform the defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial. A bill of particulars, however, is not a proper tool for discovery; it is not to be used to provide detailed disclosure of the government's evidence at trial." (Internal citations omitted.)

*United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993), *cert. denied*, 513 U.S. 831 (1994).

No bill of particulars is required when the defendant has access to the necessary detail about the charges to prepare a defense, for example, in the form of "open file" discovery or "some other satisfactory form." *See, e.g., United States v. Sepulveda*, 15 F.3d 1161, 1193 (1st Cir. 1993) (bill of particulars properly denied where defendants enjoyed open-file discovery); *United States v. Higgins*, 2 F.3d 1094, 1096-97 (10th Cir. 1993) (same).

Here, the Indictment fairly informed Henry of the charges such that he could prepare a

defense, thus avoiding surprise at trial, and so he could assert double jeopardy to bar future prosecutions. The Indictment delineated the statutory elements of each offense and provided specific facts constituting the charged offenses. Regarding the production of child pornography counts, the Indictment set forth the statutory elements and provided the specific dates of the offenses and the specific file names of the visual depictions involved. Regarding the advertising visual child pornography charges, the Indictment set forth the statutory elements and provided the specific dates of the offenses and the specific language used by Henry to commit the offenses. (ECF No. 10). Moreover, defense counsel requested discovery in open court during Henry's arraignment on February 4, 2016 (ECF No. 13), and discovery was provided for in the Court's Pretrial Scheduling Order (ECF No. 14) entered on the same date. Under these circumstances, a bill of particulars was unnecessary.

Henry has failed to show that a motion for a bill of particulars would have been granted, and if so, that any information obtained would have enabled him to successfully move for dismissal of the Indictment or strengthen his position in plea negotiations. The failure to raise a meritless argument does not constitute ineffective assistance of counsel. *See Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990). Accordingly, Henry's first ground for § 2255 relief has no merit and should be denied.

## C. Failure to Argue Mitigating Factors at Sentencing (Ground Two)

Henry next alleges that his counsel provided ineffective assistance by failing to argue mitigating factors at sentencing. (ECF No. 31, p. 4). This claim is contrary to the record, and moreover, Henry can show no prejudice.

Henry fails to explain in his § 2255 Petition exactly what mitigating factors his counsel failed

to present.  As noted above, vague and conclusory allegations, unsupported by specific facts, are not

sufficient to state a ground for relief under 28 U.S.C. § 2255.  *See Hollis*, 796 F.2d at 1046; *Smith*,

677 F.2d at 41; and, *Carpenter*, 720 F.2d at 548.

In his reply, Henry refers to being a first-time offender with zero criminal history points, and

he argues "trial counsel would be 'obliged' to present existing case law precedent which, particularly

of late, demonstrates that first time offenders who do not make physical contact with the victim(s),

should not be subject to an identical application of sentencing enhancements that apply to those who

did make physical contact and/or had a history of sexual offenses."  (ECF No. 38, pp. 5-6).

The PSR reflected Henry's lack of criminal history, that he declined to travel to meet the

victim, and that he was not a "hands-on" offender.  (ECF No. 22, ¶¶ 22, 50).  Pierce did not need to

present those § 3553(a) factors as they were already before the Court in the PSR.  Pierce did arrange

for a psychological evaluation of Henry to be conducted in connection with sentencing, and he

provided the report of that evaluation to the Court. (ECF No. 26).  At sentencing, the Court amended

the PSR to append the report of the psychological evaluation.  (ECF No. 28).

Contrary to Henry's claim, the Court did carefully consider the 18 U.S.C. § 3553(a) factors

at sentencing (ECF No. 30, p. 3), including:

- the nature and circumstances of the offense, pursuant to § 3553(a)(1), the Court

  noting "[t]he defendant showed no desire to travel to meet the victim and he did not

  commit a hands-on offense";

- the history and characteristics of the defendant, pursuant to § 3553(a)(1), the Court

  commenting that Henry had "[n]o major character flaws suggesting a proclivity

  toward sexual deviance and will be close to 70 years old upon release from

incarceration";

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, pursuant to § 3553(a)(2)(A);

- to avoid unwarranted sentencing disparities among defendants, pursuant to § 3553(a)(6); and,

- to reflect a policy disagreement with the Guidelines, pursuant to *Kimbrough v. United States*, 552 U.S. 85 (2007).

While noting that the offense conduct constituted a serious offense, the Court found that the Guidelines range overstated the seriousness of the offense conduct when compared with defendants charged and convicted of similar conduct, "as this defendant was one of the less egregious offenders." (ECF No. 30, p. 4). The Court noted again "this defendant outright declined to travel to see the victim," but "the defendant's sentencing range was more comparable to defendants who had engaged in significantly more egregious hands-on conduct." (*Id*.). The Court commented that "defendant's high sentencing range is further evidence that the guideline categorically fails to distinguish between the least culpable and most culpable offenders and is only minimally useful for crafting an appropriate sentence in any case." (*Id*.). Being mindful of the need to avoid unwarranted sentencing disparities, the Court found it appropriate to vary downward.

In sentencing Henry, the Court varied downward from the Guidelines range of 292 to 365 months imprisonment to impose the mandatory minimum sentence of 180 months imprisonment. (ECF No's. 29, 30). This downward variance resulted in a sentence 112 months below the bottom of the applicable Guidelines range. As Henry was sentenced to the minimum statutory sentence, any alleged failure of defense counsel to present mitigating evidence cannot be said to have resulted in

any prejudice.

Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts are not bound by mechanistic rules in evaluating ineffective assistance of counsel claims, *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (courts do not need to address the performance prong if a petitioner does not affirmatively prove prejudice). Thus, a court need not determine whether a defendant's counsel acted reasonably if a defendant has failed to show prejudice, as a lack of prejudice can be dispositive. *United States v. DeRoo*, 223 F.3d 919, 925 (8th Cir. 2000), citing *Apfel*, 97 F.3d at 1076. If it is easier to dispose of an ineffectiveness claim for lack of prejudice, the court should do it. *Strickland*, 466 U.S. at 697; *Whitehead v. Dormire*, 340 F.3d 532, 537 (8th Cir. 2003).

Henry has failed to show how any further presentation of § 3553(a) factors, or argument regarding disparity of sentences for those more or less culpable of a production of child pornography offense, could have resulted in a lesser sentence. There being no showing of any deficient performance by counsel or resulting prejudice, this claim necessarily fails.

### D.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen*, 114 F.3d at 703 (quoting *Voytik*, 778 F.2d at 1308). Such are the circumstances in this case. Accordingly, the summary dismissal of Henry's § 2255 Motion without an evidentiary hearing is recommended.

### E.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has

made a substantial showing of the denial of a constitutional right. A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473 (2000). For the reasons discussed above, Henry has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III. Conclusion

It is recommended that Henry's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 31) be **DISMISSED with PREJUDICE**. It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of December 2017.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE